**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTHA ANITA MANRIQUE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ACTING ) <br> COMMISSIONER OF SOCIAL SECURITY, ) <br> ) <br> Defendant. ) <br> _____ ) | NO. ED CV 13-1406-E <br><br><br><br> **MEMORANDUM OPINION** |

**PROCEEDINGS**

Plaintiff filed a complaint on August 9, 2013, seeking review of the Commissioner's denial of disability benefits. The parties filed a consent to proceed before a United States Magistrate Judge on September 4, 2013. Plaintiff filed a motion for summary judgment on February 10, 2014. Defendant filed a motion for summary judgment on April 30, 2014. The Court has taken the motions under submission without oral argument. See L.R. 7-15; Minute Order, filed August 19, 2013.

///

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

In 2009, Plaintiff's asserted disability allegedly beginning January 1, 2006, based on "depression, chronic cough, [a] bladder condition, and migraines" (Administrative Record ("A.R.") 130-37, 151).[1] On February 7, 2012, an Administrative Law Judge ("ALJ") found that Plaintiff was not disabled (A.R. 17-25). Specifically, the ALJ found that Plaintiff has severe "chronic urinary tract infections and migraine headaches," but retains the residual functional capacity for work at all exertion levels, with the following non-exertional limitations: (1) Plaintiff must work in close proximity to restroom facilities; (2) Plaintiff must not work in very bright light or direct sunlight without the use of dark glasses; and (3) Plaintiff cannot work at jobs that require proficiency in English (A.R. 19-21). In reliance on the testimony of a vocational expert, the ALJ found there exist certain unskilled jobs Plaintiff can perform (A.R. 24 (adopting vocational expert testimony at A.R. 48-49)). The Appeals Council denied review (A.R. 1-3).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue,

---

[1] Plaintiff previously had applied for disability benefits and had been denied as of April 11, 2007 (A.R. 158-59).

2

499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

This Court "may not affirm [the Administration's] decision simply by isolating a specific quantum of supporting evidence, but must also consider evidence that detracts from [the Administration's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and quotations omitted); see Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007) (same). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973), cert. denied, 417 U.S. 933 (1974); Harvey v. Richardson, 451 F.2d 589, 590 (9th Cir. 1971).

**DISCUSSION**

After consideration of the record as a whole, Defendant's motion is granted and Plaintiff's motion is denied. The Administration's findings are supported by substantial evidence and are free from material[2] legal error. Plaintiff's contrary arguments are unavailing.

---

[2] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

**I.   Substantial Evidence Supports the Conclusion Plaintiff Can Work.**

The record contains no opinion from a treating physician regarding Plaintiff's alleged limitations. Dr. Sandra Eriks, a consultative internist, examined Plaintiff and prepared an Internal Medicine Evaluation dated February 18, 2010 (A.R. 363-67). Plaintiff complained of urinary retention requiring self-catheterization three to four times per day (A.R. 363).[3] Plaintiff also complained of migraine headaches, but reportedly said that her last migraine had occurred more than a year earlier, in January of 2009 (A.R. 363). Plaintiff occasionally used Sumatriptan for her headaches "but most often just uses Excedrin Migraine," which "helps quite a bit" (A.R. 363). The migraines reportedly "can last several hours or until she uses the Sumatriptan" (A.R. 363).[4] Dr. Eriks observed no

---

[3]  Medical records from 2006 document a neurogenic bladder condition causing urinary retention for which Plaintiff began self-catheterization (A.R. 232-40). A March 2006 cystoscopy showed a "markedly irregular" bladder wall, but a January 2008 cystoscopy was normal (A.R. 232, 256, 373). As of July 2009, treatment notes indicate Plaintiff had chronic urinary tract infections for the previous three years (A.R. 264). A renal sonogram from April 2010 was normal (A.R. 434; see also A.R. 253 (normal renal ultrasound from 2006)).

[4]  Contrary to her report to Dr. Eriks, Plaintiff testified that she experiences migraines every one to two weeks and the migraines last anywhere from three days to a week (A.R. 42-43, 45; see also A.R. 175-76 (headache questionnaire reporting similar episodes)). Plaintiff claimed that the consultative examiner must have misunderstood Plaintiff concerning the timing of her most recent migraine (A.R. 42).

There is little in the record documenting Plaintiff's migraines. While Plaintiff complained of a history of migraine headaches (A.R. 284, 436, 438), the record reflects only three visits to doctors for headache treatment. Plaintiff presented to
(continued...)

abnormalities on examination and opined that Plaintiff would have no restrictions from working. See A.R. 364-66 (Dr. Eriks describing the examination as "unremarkable").

Consultative examining psychologist Dr. Carol Fetterman prepared a Comprehensive Psychological Evaluation for Plaintiff dated February 18, 2010 (A.R. 354-60). Dr. Fetterman diagnosed Plaintiff with a mood disorder, not otherwise specified, and assigned a Global Assessment of Functioning ("GAF") score of 68 (A.R. 359).[5] Plaintiff's symptoms were "very mild" and she appeared to be functioning well (id.). Dr. Fetterman opined that Plaintiff would have mild impairment in her ability to: (1) follow detailed and complex instructions; (2) maintain concentration and attention, persistence and pace; and (3) maintain regular attendance in the workplace and perform work activities on a consistent basis (A.R. 360). Dr. Fetterman indicated that Plaintiff's condition would be

///

---

[4](...continued)
doctors complaining of a headache on October 2, 2007, October 25, 2008, and February 25, 2011 (A.R. 270, 294, 439). A treatment note from May 20, 2008, indicates that Plaintiff was then "better about headaches" (A.R. 282).

[5] Clinicians use the GAF scale to report an individual's overall psychological functioning. The scale does not evaluate impairments caused by physical or environmental factors. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 34 (4th Ed. 2000 (Text Revision)). A GAF score of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships." Id.

expected to improve with treatment in the next 12 months (A.R. 359).[6]

The consultative opinions furnish substantial evidence supporting the ALJ's finding of non-disability. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion based on independent examination of the claimant constitutes substantial evidence). The opinions of non-examining state agency physicians also lend some support to the ALJ's findings. State agency physicians believed Plaintiff's physical condition would result in no exertional limitations, and found Plaintiff's mental impairment non-severe (A.R. 382-96). Where, as here, the opinions of non-examining physicians do not contradict "all other evidence in the record," an ALJ properly may rely on these opinions. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Curry v. Sullivan, 925 F.2d 1127, 1130 n.2 (9th Cir. 1990). The ALJ may not rely solely on the opinions of non-examining physicians. See, e.g., Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995); Erickson v. Shalala, 9 F.3d 813, 818 n.7 (9th Cir. 1993). Reliance was not sole in the present case. In fact, the ALJ chose not to give "great weight" to the opinions of the non-examining physicians, placing greater weight on other portions of the Administrative record (A.R. 23).

Significantly, no physician has opined Plaintiff is totally disabled from all employment. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (in upholding the Administration's decision, the

---

[6] To be disabling, an impairment must have lasted or be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 423(d)(1)(A).

Court emphasized: "None of the doctors who examined [claimant] expressed the opinion that he was totally disabled."); accord Curry v. Sullivan, 925 F.2d at 1130 n.1. Plaintiff evidently sought such an opinion without success. She presented for treatment in June 2009 "antagonistic and . . . insisting on a disability note" (A.R. 266). At that time, the provider "stressed continually that no note can be given until medical justification can [be] indicated" (A.R. 266). A treatment note from February 2011 states that Plaintiff inquired about disability based on her urinary retention (A.R. 438). However, the provider did not indicate that Plaintiff was disabled at that time either (A.R. 438).

The vocational expert testified that a person having the limitations identified by the ALJ could perform jobs existing in significant numbers in the national economy (A.R. 48-49). This testimony furnishes substantial evidence there exist significant numbers of jobs Plaintiff can perform. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); see also Barker v. Secretary, 882 F.2d 1474, 1478-80 (9th Cir. 1989); Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986); see generally Johnson v. Shalala, 60 F.3d 1428, 1435-36 (9th Cir. 1995) (ALJ properly may rely on vocational expert to determine jobs claimant could perform); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520.

To the extent the record contains any conflicting evidence, it was the prerogative of the ALJ to resolve the conflicts. See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001). Where, as here, the evidence "is susceptible to more than one rational interpretation,"

the Court must uphold the administrative decision. <u>Andrews v. Shalala</u>, 53 F.3d at 1039-40; <u>accord</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002); <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997); <u>see also</u> <u>Morgan v. Commissioner</u>, 169 F.3d 595, 601 (9th Cir. 1999) (where medical reports are inconclusive, the resolution of conflicts in the evidence is the province of the Commissioner).

**II.  Plaintiff's Various Arguments Do Not Demonstrate Material Error.**

Plaintiff argues that the ALJ mischaracterized her underlying impairment as chronic urinary tract infections rather than urinary bladder retention requiring frequent self-catheterizations (Plaintiff's Motion, pp. 3-4). Plaintiff asserts that her bladder impairment requires "unscheduled work breaks of varying degree depending on the severity of her urinary retention and the frequency of her urinary tract infections" (Plaintiff's Motion, pp. 4-5 (citing A.R. 50 (vocational expert testimony)). Plaintiff faults the ALJ for suggesting that Plaintiff's bladder impairment can be accommodated by working in close proximity to a bathroom (Plaintiff's Motion, pp. 5-6). Plaintiff also argues that the ALJ assertedly did not properly consider the impact of Plaintiff's migraines on her ability to work (Plaintiff's Motion, p. 6 (citing A.R. 50 (vocational expert testimony)).

Plaintiff testified that she could not work mainly because she assertedly has to catheterize herself to remove urine from her bladder between eight and 10 times per day when she has a urinary tract infection (A.R. 40). When she does not have an infection, she still

assertedly has to catheterize herself more than four times per day (A.R. 41).[7] Catheterization reportedly takes six to eight minutes (A.R. 41). Plaintiff also testified that she has migraines every one to two weeks and her migraines supposedly last from three days to a week (A.R. 42-43, 45).

In response to questioning by Plaintiff's counsel, the vocational expert testified that if a person required more than three unscheduled 5- to 10-minute breaks per day, the person could not perform the jobs identified (A.R. 50). However, the jobs identified would allow a break "every couple of hours" and a lunch break (A.R. 50). The vocational expert also testified a person who missed more than three days per month would not be employable (A.R. 50).

As discussed above, in opining regarding Plaintiff's residual functional capacity, the consultative examiner on whom the ALJ relied considered Plaintiff's urinary retention and alleged need to catheterize, as well as her migraines. See A.R. 363. The ALJ also expressly considered Plaintiff's treatment for chronic urinary retention, chronic urinary tract infections, and migraines while reviewing the medical record and determining Plaintiff's residual functional capacity (A.R. 21-23). Any issue Plaintiff has with the ALJ's determination at step two of the sequential evaluation process is not material because the ALJ and the doctors on whom the ALJ relied considered Plaintiff's urinary retention and self-catheterization in determining Plaintiff's residual functional capacity. See Lewis v.

---

[7] Plaintiff's husband reported that Plaintiff has to extract her urine every three hours (A.R. 162).

1  Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (failure to find a
2  particular condition severe was harmless when the ALJ discussed the
3  condition later in the sequential evaluation process and included
4  relevant restrictions); see also 20 C.F.R. § 404.1545(a)(2) (ALJ must
5  consider all of claimant's severe and non-severe medically-
6  determinable impairments in determining claimant's residual functional
7  capacity).

9  Plaintiff appears to argue that the ALJ erred in rejecting
10 Plaintiff's suggestions that her bladder condition would require more
11 than three unscheduled breaks per day, and that she would miss more
12 than three days per month due to her migraines.  Plaintiff's
13 suggestions are not fully supported by the objective medical evidence.
14 Moreover, the record contains evidence impugning Plaintiff's testimony
15 regarding the extent of her limitations.  For example, Plaintiff
16 reported to the consultative examiner that she used a catheter only
17 three to four times per day (A.R. 363).  In addition, Plaintiff and
18 her husband both reported that Plaintiff uses a catheter only once
19 every three or four hours.  See A.R. 151, 162.  Accordingly to the
20 consultative examiner, Plaintiff also reported that she had not had a
21 migraine in over a year and that her migraines last only a matter of
22 hours, not days (A.R. 363).  It was the ALJ's prerogative to resolve
23 the conflicts in the evidence and to determine Plaintiff's
24 credibility.  See Lewis v. Apfel, 236 F.3d at 509; Tonapetyan v.
25 Halter, 242 F.3d at 1147-48 (ALJ properly relied on claimant's
26 inconsistent statements to reject claimant's subjective complaints).
27 ///
28 ///

1    Plaintiff does not appear directly to challenge the ALJ's
2 assessment of Plaintiff's credibility. Any such challenge would be
3 unavailing; the ALJ stated sufficient reasons to find Plaintiff's
4 testimony regarding her alleged limitations less than fully credible.
5 See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010) (any
6 discounting of the claimant's complaints must be supported by
7 specific, cogent findings); accord, Lester v. Chater, 81 F.3d at 834;
8 but see Smolen v. Chater, 80 F.3d 1273, 1282-84 (9th Cir. 1996)
9 (indicating that ALJ must offer "specific, clear and convincing"
10 reasons to reject a claimant's testimony where there is no evidence of
11 malingering).[8] Among the reasons for finding Plaintiff's testimony
12 less than fully credible, the ALJ cited: (1) Plaintiff's "somewhat
13 normal level" of daily activities, which included doing all household
14 chores, cooking, shopping, and caring for her mentally ill son (A.R.
15 21-22; see also A.R. 162-63, 169-70, 356-57); (2) the inconsistencies
16 between Plaintiff's testimony and what she reported to the
17 consultative examiner (A.R. 21-22); (3) Plaintiff's routine,
18 conservative treatment for her medical conditions (A.R. 22-23); and
19 (4) the medical record showing normal results on examination and
20 normal renal sonograms (A.R. 22-23).
21 ///

---

[8]    In the absence of an ALJ's reliance on evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard. See, e.g., Chaudhry v. Astrue, 688 F.3d 661, 670, 672 n.10 (9th Cir. 2012); Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); Taylor v. Commissioner, 659 F.3d at 1234; see also Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting earlier cases). In the present case, the ALJ's findings are sufficient under either standard, so the distinction between the two standards (if any) is academic.

Although a claimant's credibility "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor. . . ." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Here, the medical evidence suggests Plaintiff's problems have not been, and are not now, as profound as she has claimed.

The fact that Plaintiff has sought only a conservative course of treatment also properly may discredit her allegations of disabling symptoms. See Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (failure to request "any serious medical treatment for [claimant's] supposedly excruciating pain" was adequate reason to reject claimant's pain testimony); Johnson v. Shalala, 60 F.3d at 1434 (conservative treatment can suggest a lower level of both pain and functional limitation, justifying adverse credibility determination).

Additionally, the previously referenced inconsistencies between Plaintiff's testimony and her reports concerning her limitations justify the ALJ's discounting of Plaintiff's credibility. See Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) ("In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering . . . inconsistencies in claimant's testimony.").

Finally, Plaintiff's daily activities arguably might contribute toward the ALJ's discounting of Plaintiff's testimony regarding

allegedly disabling symptoms. See, e.g., Thune v. Astrue, 499 Fed. App'x 701, 703 (9th Cir. 2012) (ALJ properly discredited pain allegations as contradicting claimant's testimony that she gardened, cleaned, cooked, and ran errands); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (claimant's "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances" was sufficient explanation for rejecting claimant's credibility).[9]

In sum, the ALJ stated sufficient reasons to allow the Court to conclude that the ALJ discounted Plaintiff's credibility on permissible grounds. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). The Court therefore defers to the ALJ's credibility determination. See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th

---

[9] It is difficult to reconcile certain Ninth Circuit opinions discussing when a claimant's daily activities properly may undermine the claimant's credibility. Compare Stubbs-Danielson v. Astrue (cited above) and Burch v. Barnhart (cited above) with Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability") and Gallant v. Heckler, 753 F.2d 1450, 1453-55 (9th Cir. 1984) (fact that claimant could cook for himself and family members as well as wash dishes did not preclude a finding that claimant was disabled due to constant back and leg pain). Because of this difficulty, the Court in the present case elects not to rely on the ALJ's finding regarding Plaintiff's daily activities. Assuming arguendo that the ALJ's partial reliance on Plaintiff's daily activities was improper, the Court nevertheless upholds the ALJ's credibility determination. Under Carmickle v. Commissioner, 533 F.3d 1155, 1163 (9th Cir. 2008), the infirmity of one or two supporting reasons for an ALJ's credibility determination does not require overturning the determination if independently valid supporting reasons remain. Independently valid supporting reasons remain in the present case.

Cir. 2007) (court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); accord <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1464 (9th Cir. 1995).

## CONCLUSION

For all of the reasons discussed herein, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 16, 2014.

_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

14